IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | ) CIVIL NO. 13-00091 JMS/BMK |
| | ) |
| Maui Industrial Loan & Finance Co., | ) ORDER AFFIRMING |
| Inc., | ) BANKRUPTCY COURT'S |
| | ) JANUARY 24, 2013 |
| Debtor. | ) MEMORANDUM OF DECISION |
| _____ | ) ON PLAINTIFF'S MOTION FOR |
| | ) PARTIAL SUMMARY JUDGMENT |
| DANE S. FIELD, | ) ON COUNTS 2, 3, AND 4 |
| | ) |
| Plaintiff/Appellee/Cross- | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| THOMAS N. DECOITE, | ) |
| | ) |
| Defendant/Appellant/ | ) |
| Cross-Appellee. | ) |
| _____ | ) |

**ORDER AFFIRMING BANKRUPTCY COURT'S JANUARY 24, 2013
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON COUNTS 2, 3, AND 4**

## I. INTRODUCTION

For many years, Lloyd Kimura ("Kimura") ran Debtor Maui Industrial

Loan & Finance Co. ("MFC") as a Ponzi scheme, and had MFC make multiple

transfers to Appellant Thomas DeCoite ("DeCoite"), who had entrusted Kimura to

manage his finances.  MFC subsequently declared bankruptcy, and Kimura entered

into a plea agreement admitting that he operated MFC as a Ponzi scheme.  *See*

Bankr. Adv. No. 10-90137 (Bankr. D. Haw.), Doc. No. 77-1.

Trustee Dane S. Field ("Trustee") filed this adverse action against DeCoite seeking to avoid the transfers he received from MFC pursuant to 11 U.S.C. § 544 and Hawaii Revised Statutes ("HRS") § 651C-4.  On January 24, 2013, the bankruptcy court granted Trustee's Motion for Summary Judgment, determining that Kimura's transfers were made with actual intent to defraud creditors of MFC in light of Kimura's admissions in his plea agreement, and that DeCoite was not entitled to a good faith defense because Kimura was DeCoite's agent.  A February 11, 2013 Judgment awarded Trustee $1,646,945.20, plus prejudgment interest accruing from the date of each transfer in the amount of $1,723,453.10.

In this appeal, DeCoite argues that the bankruptcy court made several evidentiary and legal errors.  Based on the following, the court AFFIRMS the January 24, 2013 Decision as to Trustee's Motion for Summary Judgment,[1] and the February 11, 2013 Judgment.

---

[1]  The January 24, 2013 Decision also granted DeCoite's Counter-Motion for Summary Judgment as to Count 6 of Trustee's Amended Complaint.  Although Trustee appeals this determination, Trustee represents that "should this Court affirm the bankruptcy court's summary judgment in Trustee's favor on Counts 2, 3, and 4, the Court need not reach Trustee's cross-appeal."  *See* Doc. No. 7, Tr. Br. at 6-7.  Because the court affirms the bankruptcy court as to Trustee's Motion for Summary Judgment, the court DEEMS MOOT Trustee's cross-appeal.

## II.  **BACKGROUND**

The basic facts underlying this dispute are as follows:[2]

DeCoite and Kimura, the principal of MFC, have known each other since the 1970s.  Over the years, DeCoite entered into several business transactions with MFC and Kimura, and Kimura also acted as DeCoite's accountant, bookkeeper, and manager of financial affairs.  For example, in the 1990s, DeCoite gave significant financial control to Kimura, including authorizing Kimura to sign checks on DeCoite's checking account and to deposit checks payable to DeCoite, without his endorsement, into one of MFC's checking accounts.

On January 28, 2010, MFC filed a voluntary petition for Chapter 7

---

[2]  Although the parties designated the entire record in the bankruptcy adversary proceeding to be included in the record on appeal pursuant to Federal Rule of Bankruptcy Procedure 8006, they did not submit to this court the entire summary judgment briefing before the bankruptcy court, and in particular, they did not provide many of the summary judgment exhibits.  Local Rule 8009.1 requires parties to provide an appendix of the excerpts of record to be considered on appeal, and the court may limit its "review of the record to an examination of those excerpts which have been provided by the parties, and [is] not obligated to examine portions of the record not included in the excerpts."  *In re Bishop*, 2007 WL 7532285, at *3 (B.A.P. 9th Cir. Nov. 5, 2007) (citing *In re Kritt*, 190 B.R. 382, 386-87 (B.A.P. 9th Cir. 1995); *In re Anderson,* 69 B.R. 105, 109 (B.A.P. 9th Cir. 1986)); *see also In re McCarthy*, 230 B.R. 414, 417 (B.A.P. 9th Cir. 1999) (stating that an appendix is "mandatory, not optional"); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir. 1991) (per curiam) (dismissing appeal for failure to provide relevant portions of trial transcript).  The court therefore largely declines the parties' apparent invitation to root around the original bankruptcy record to discern the basic facts of this case.  *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (stating that judges are not "like pigs, hunting for truffles [in the record]").  Given that DeCoite does not object to the bankruptcy court's basic recitation of facts or its determination as to the amounts of the transfers from MFC to DeCoite (instead raising only evidentiary objections to certain exhibits, which were not all provided to the court either), the court largely bases its statement of facts on those of the bankruptcy court's January 2013 Decision.

relief under the Bankruptcy Code.  Field was subsequently appointed Trustee and

commenced this adversary proceeding against DeCoite on October 18, 2010,

asserting that transfers to DeCoite totaling $1,226,646.82 were fraudulent in

violation of 11 U.S.C. §§ 544, 548, and 550, and HRS § 651C-4.  *See* Doc. No. 12-

17, DeCoite Appendix ("DA") Ex. Q.  In the meantime, on January 5, 2011,

Kimura pleaded guilty to numerous federal felonies pursuant to a plea agreement

and admitted that he ran MFC as a Ponzi scheme.

In the plea agreement, Kimura admitted that starting in the late 1980s,

he devised a scheme whereby he solicited individuals (usually his clients from his

accounting business) to invest money with MFC.  *See* Bankr. Adv. No. 10-90137

(Bankr. D. Haw.), Doc. No. 77-1 at ¶ 8d.  Kimura represented that MFC was a

bank or savings and loan business which loaned funds to individuals at a high

interest rate, and that the loans were secured with collateral or liens on property.

*Id.*  Kimura took the funds he received and instead of investing them, he used them

for his personal and business endeavors or to pay older investors principal and

interest payments.  *Id.* ¶ 8(e).

In January 2012, the parties stipulated to the filing of a First Amended

Complaint ("FAC") alleging an additional claim for breach of contract.  *See* Doc.

No. 12-16, DA Ex. P.  In total, the FAC asserts six claims, titled:

(1) Fraudulent Transfer (Count 1); (2) Transferee Liability (Count 2);

(3) Fraudulent Transfer (HRS § 651C-4) (Count 3); (4) Strong Arm Powers (11

U.S.C. § 544) (Count 4); (5) Unjust Enrichment/Constructive Trust (Count 5); and

(6) Breach of Contract (Count 6). As to the fraudulent transfer counts, the FAC

alleges that DeCoite received transfers from MFC totaling $540,390.40, which

constitute proceeds of the Ponzi scheme.

On October 19, 2012, Trustee filed its Motion for Summary Judgment

on Counts 2, 3, and 4 of the FAC, seeking a determination that MFC fraudulently

transferred a total of $1,646,946.20 to DeCoite, which includes (1) direct cash

transfers totaling $532,359.81; (2) loans in the total amount of $1,035,294.01; and

(3) a release from an obligation for DeCoite to pay $79,291.30 in partial

satisfaction of a debt which Kimura (as opposed to MFC) owed to DeCoite.

In its January 24, 2013 Decision, the bankruptcy court granted

Trustee's Motion for Summary Judgment. The February 11, 2013 Judgment

followed, finding DeCoite liable for transfers totaling $1,646,945.20, plus

prejudgment interest at the Hawaii state rate (totalling $1,723,453.10), and post-

judgment interest.

DeCoite filed his Notice of Appeal on February 22, 2013, and filed his

Opening Brief on April 23, 2013. Doc. No. 11. Trustee filed an Answering Brief

on May 10, 2013, Doc. No. 14, and DeCoite filed his Reply on May 28, 2013.

Doc. No. 18. A hearing was held on June 10, 2013.

### III. <u>STANDARD OF REVIEW</u>

The court must review de novo the bankruptcy court's decision on summary judgment. *In re Sabban*, 600 F.3d 1219, 1221-22 (9th Cir. 2010); *In re AFI Holding, Inc.*, 525 F.3d 700, 702 (9th Cir. 2008). "Summary judgment is to be granted if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." *AFI Holding*, 525 F.3d at 702 (citing Fed. R. Civ. P. 56(c)); *In re SNTL Corp.*, 571 F.3d 826, 834 (9th Cir. 2009).

"Evidentiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion and can only be reversed if [they were] both 'manifestly erroneous and prejudicial.'" *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (quoting *Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006)); *see also Wagner v. Cnty. of Maricopa*, 706 F.3d 942, 949 (9th Cir. 2013).

An award of prejudgment interest is reviewed for abuse of discretion.[3]

---

[3] Citing no legal support, DeCoite argues that the court should review the bankruptcy

(continued...)

*See In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008); *In re Agricultural Research &*
*Tech. Grp.*, 916 F.2d 528, 541-42 (9th Cir. 1990).

## IV.  <u>DISCUSSION</u>

DeCoite argues that the bankruptcy court committed several
evidentiary and legal errors in granting Trustee's Motion for Summary Judgment
and entering Judgment against DeCoite in the amount of $1,646,945.20, plus
prejudgment interest at the applicable Hawaii state law rate.  The court addresses
each of DeCoite's arguments in turn.

### A.    **Objections to Trustee's Exhibits**

In opposition to Trustee's Motion for Summary Judgment, DeCoite
argued that Trustee's exhibits were not properly authenticated and contained
hearsay.[4]  Trustee addressed this objection by filing a Supplemental Authentication
of Exhibits, Doc. No. 12-11, DA Ex. K, and the parties also submitted
supplemental briefing.  *See* Doc. Nos. 11-6, -7, DA Exs. F, G.  The January 24,
2013 Decision overruled each of DeCoite's objections, and DeCoite now renews

---

[3](...continued)
court's award of prejudgment interest de novo because prejudgment interest was awarded as a
result of a summary judgment determination.  Doc. No. 11, DeCoite Br. at 3.  The court rejects
this argument as contrary to well-settled precedent.  *See, e.g.*, *Donnell v. Kowell*, 533 F.3d 762,
772 (9th Cir. 2008) (noting, on appeal from summary judgment, that prejudgment interest award
is subject to abuse of discretion standard).

[4]  DeCoite raises no hearsay objections before this court, and the court addresses only the
arguments made on appeal.

his objections on appeal.  Based on the following, the court finds no abuse of discretion by the bankruptcy court in overruling these objections.

### 1. *Trustee Exhibits N, O, P, and Q*

Trustee's Exhibits N, O, P, and Q include checks, promissory notes, a "Funds Transfer Request," and spreadsheets (prepared for litigation) summarizing this information.  *See* Doc. No. 15, TA at 20-193.   Before the bankruptcy court, Trustee argued that these exhibits are self-authenticating under Federal Rule of Evidence 902(9) as "commercial paper . . . and related documents," and in response, DeCoite focused largely on the fact that the spreadsheets are not commercial paper.  *See* Doc. No. 12-7, DA Ex. G at 3-4.  The bankruptcy court overruled DeCoite's objection, finding that the spreadsheets are demonstrative exhibits and/or admissible as summaries under Federal Rule of Evidence 1006.

On appeal, DeCoite argues that the bankruptcy court erred by failing to address his objection that these exhibits were unauthenticated.  Doc. No. 11, DeCoite Mot. at 28-29.  The court rejects this argument.

As an initial matter, DeCoite did not clearly raise the authentication objection before the bankruptcy court, instead focusing on the admissibility of the spreadsheets.[5]  *See* Doc. No. 12-7, DA Ex. G at 3-4.  As a result, DeCoite appears

---

[5]  Of the two pages in his supplemental brief that DeCoite devoted to this objection, there
(continued...)

to have waived this objection on appeal.  *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003-04 (9th Cir. 2002) (explaining that a party must object in the district court to preserve an evidentiary challenge in summary judgment proceedings).  Further, even if the court considers the objection, it is without merit. As provided in Federal Rule of Evidence 902(9), "[c]ommercial paper, a signature on it, and related documents, to the extent allowed by general commercial law," are self-authenticating and require no extrinsic evidence of authenticity.  The checks, promissory notes, and funds transfer request fall squarely within Rule 902(9).  *See, e.g.*, *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004) ("As a negotiable instrument, a check is a species of commercial paper, and therefore self-authenticating."); *United States v. Varner*, 13 F.3d 1503, 1509 (11th Cir. 1994) ("Mere production of a note establishes prima facie authenticity and is sufficient to make a promissory note admissible.").

> **2.  *Documents Produced by DeCoite in Discovery (Exhibits Q, U, JJ, KK)***

Trustee submitted documents DeCoite produced during discovery including Exhibits Q, U, JJ, and KK, and in response, DeCoite objected to them for

---

[5](...continued)
is only one sentence arguably raising lack of authentication.  *See* Doc. No. 12-7, DA Ex. G at 4 (Even if the "spreadsheets are summaries under FRE 1006, the Trustee would still need to have someone with knowledge of the underlying transactions to testify as to the contents").

lack of authentication because DeCoite did not prepare or create them. Doc. No. 12-7, DA Ex. G at 6. The January 24, 2013 decision overruled this objection, determining that Trustee would be able to authenticate these exhibits at trial, whether through the testimony of DeCoite or Kimura's wife.

DeCoite has failed to establish that the bankruptcy court abused its discretion. As an initial matter, DeCoite did not include these exhibits in his Appendix, leaving the court no opportunity to determine the merit of DeCoite's objection. Indeed, the only exhibit provided to the court (by Trustee) is Exhibit Q, which is a Funds Transfer Request that appears to be signed by DeCoite. *See* Doc. No. 15, TA at 193. Given DeCoite's signature on Exhibit Q (as well as the fact that it is admissible pursuant to Federal Rule of Evidence 902(9) as explained above), the court cannot discern the basis of DeCoite's objection to Exhibit Q. And as to all these exhibits, documents produced by a party in discovery may be deemed authentic when offered by the party-opponent.[6] Other than asserting that

---

[6] *See Orr v. Bank of Am.,* 285 F.3d 764, 777 n.20 (9th Cir. 2002); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 889 n.12 (9th Cir. 1996) ("MPI claims the district court should not have considered MPI documents which were attached to the declaration of GoodTimes' attorney, because the attorney could not authenticate them. The district court did not err in considering the documents as indicators of MPI's motivation, however; MPI produced the documents to GoodTimes, many of the documents were on MPI letterhead and MPI does not contest their authenticity."); *Anand v. BP West Coast Prods. LLC,* 484 F. Supp. 2d 1086, 1092 n.11 (C.D.Cal. 2007) ("Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent."); *see also* 31 *Federal Practice & Procedure: Evidence* § 7105, at 39

(continued...)

he did not personally create or prepare these documents, DeCoite offers no real challenge to these exhibits -- he presents no declaration or other evidence raising a question as to the content of these exhibits.  And to the extent DeCoite could not attest to the content of these documents, the bankruptcy court did not abuse its discretion in determining that Ms. Kimura could authenticate these exhibits -- she was an officer and director of MFC and authenticated other MFC business records. *See* Doc. No. 15, TA at 243-45.

### 3. Authentication by Trustee's Counsel (Trustee Exhibits A, B, J, N, O, P, Q, V, X, W, and Y-GG)

DeCoite objected to a number of Trustee's exhibits on the basis that they were improperly authenticated by Trustee's counsel, who lacks personal knowledge.  *See* Doc. No. 15, TA at 246-48 (declaration authenticating exhibits). The bankruptcy court overruled this objection, determining that counsel's declaration states only that the exhibits are true copies of originals in counsel's possession and/or were produced by DeCoite.

DeCoite fails to show that the bankruptcy court abused its discretion. Again, DeCoite failed to provide these exhibits to the court.  And even addressing the substance of DeCoite's argument, the declaration of Trustee's counsel states

---

[6](...continued)
("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request.").

that these exhibits "are true copies of the originals, which are in the possession of

[Trustee's counsel]."  DeCoite cannot seriously contend this statement is untrue,

and offers no challenge as to the content of these exhibits.  Indeed, the court

already addressed several of these exhibits above (Trustee's Exhibits N, O, P, Q),

which were all self-authenticating, and the court does not speculate as to the other

exhibits.

### 4.     *Copies of Checks*

DeCoite objected to the Trustee's submission of copies of checks

without any authentication.  The January 24, 2013 Decision overruled this

objection, explaining that checks are self-authenticating, and copies of checks are

admissible under Federal Rule of Evidence 1003, which provides that a "duplicate

is admissible to the same extent as the original unless a genuine question is raised

about the original's authenticity or the circumstances make it unfair to admit the

duplicate."

DeCoite argues that it is unfair to admit the duplicate where

information on both sides of the check may not be reproduced, and copies of

checks are not treated as originals in the real world.  Doc. No. 11, DeCoite Mot. at

33-34.  The court rejects this argument.  DeCoite does not, and cannot, argue that

the exhibits could not be submitted in admissible form at trial -- Trustee's counsel

states in her declaration that she possesses the originals of the checks.  Doc. No.

15, TA at 247.

In sum, the court finds no abuse of discretion by the bankruptcy court

in considering Trustee's evidence at summary judgment.

## B.  Determination That Trustee Is Entitled to Void All Transfers from MFC to DeCoite

The bankruptcy court determined that the transfers from MFC to

DeCoite were fraudulent pursuant to HRS § 651C-4, which provides, in relevant

part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

In turn, HRS § 651C-8(a) provides that "[a] transfer or obligation is not voidable

under section 651C-4(a)(1) against a person who took in good faith and for a

reasonably equivalent value or against any subsequent transferee or obligee."[7]

The bankruptcy court found no genuine issue of material fact that the

---

[7] The person invoking the good faith defense has the burden of establishing good faith. *In re Cohen*, 199 B.R. 709, 718 (B.A.P. 9th Cir. 1996); Uniform Fraudulent Transfer Act § 8(a) cmt. 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.").

transfers from MFC to DeCoite (totaling $1,646,945.20) were made with actual intent to defraud creditors because Kimura pled guilty to orchestrating the MFC Ponzi scheme.  The bankruptcy court further rejected that DeCoite had a good faith defense because Kimura acted as an agent for DeCoite in managing DeCoite's financial affairs such that Kimura's knowledge of the Ponzi scheme was imputed to DeCoite.

On appeal, DeCoite argues that Trustee failed to carry his burden of establishing that (1) the transfers from MFC to DeCoite were fraudulent; and (2) DeCoite is not entitled to a good faith defense.  Based on a de novo review, the court AFFIRMS the bankruptcy court's summary judgment determinations.

### 1.    *Whether the Transfers from MFC Are Fraudulent*

The bankruptcy court properly determined that no genuine issue of material fact exists that the transfers from MFC to DeCoite were fraudulent.

A Ponzi scheme, by definition, is made up of a series of fraudulent transfers -- "[t]he fraud consists of funneling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment."  *Donell v. Kowell*, 533 F.3d 762, 767 n.2 (9th Cir. 2008) (quoting *In re United Energy Corp.*, 944 F.2d 589, 590 n.1 (9th Cir.

14

1991)).  As *Slatkin* explained, courts presume that the "mere existence of a Ponzi scheme [is] sufficient to establish the actual intent to hinder, delay or defraud creditors under . . . [a] state's . . . fraudulent transfer statute."  525 F.3d at 814; *see, e.g.*, *AFI Holding*, 525 F.3d at 704; *In re Indep. Clearing House Co.*, 77 B.R. 843, 860 (D. Utah 1987) (noting that fraudulent intent is presumed because the debtor knows that the scheme ultimately must collapse); *see also Agric. Research & Tech. Grp.*, 916 F.2d at 535 (examining HRS § 541C-4).

*Slatkin* further held that a debtor's admission in a plea agreement that he operated a Ponzi scheme conclusively establishes that the transfers were made with fraudulent intent.  525 F.3d at 814; *see, e.g.*, *In re Nat'l Consumer Mortg., LLC*, 2013 WL 164247, at *12 (D. Nev. Jan. 14, 2013) (finding that defendant's plea agreement admitting to a Ponzi scheme "conclusively established" fraudulent intent of transfer); *La Bella v. Bains*, 2012 WL 1976972, at *4 (S.D. Cal. May 31, 2012) (determining that plea agreement admitting to Ponzi scheme established fraudulent intent); *In re AFI Holding, Inc.*, 2008 WL 4184654, at *3 (C.D. Cal. Sept. 4, 2008) (finding that defendant's plea agreement conclusively established the existence of Ponzi scheme and fraudulent intent).

Applying these principles, Kimura entered into a plea agreement in which he admitted that he ran MFC as a Ponzi scheme.  Specifically, Kimura

admitted that starting in the late 1980s, he devised a scheme whereby he solicited individuals (usually his clients from his accounting business) to invest money with MFC. *See* Bankr. Adv. No. 10-90137 (Bankr. D. Haw.), Doc. No. 77-1 at ¶ 8d. Kimura represented that MFC was a bank or savings and loan business which loaned funds to individuals at a high interest rate, and that the loans were secured with collateral or liens on property. *Id.* Kimura took the funds he received and instead of investing them, he used them for his personal and business endeavors or to pay older investors principal and interest payments. *Id.* ¶ 8(e). This plea agreement therefore conclusively establishes that MFC transferred funds with actual intent to hinder, delay, or defraud any creditor of MFC. *See Slatkin*, 525 F.3d at 814. Thus, there is no genuine issue of material fact that MFC's transfers to DeCoite were fraudulent.

In opposition, DeCoite argues that *Slatkin* did not hold that a plea agreement conclusively establishes that transfers from a Ponzi scheme operator are fraudulent. Rather, DeCoite asserts that *Slatkin* stands for the limited proposition that a debtor's plea agreement establishes that transfers of *profits* to investors, as opposed to the *entire transfers* themselves, were made with actual intent to defraud. *See* Doc. No. 11, DeCoite Mot. at 11. The court rejects DeCoite's interpretation of *Slatkin.*

16

DeCoite's argument ignores that *Slatkin* plainly held that a plea agreement establishes fraudulent intent:

> We now hold that a debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) and [a state's fraudulent transfer statute,] and precludes relitigation of that issue.

525 F.3d at 814.

*Slatkin* applied this holding to grant the specific relief sought by the bankruptcy trustee in that case -- return of the *profits* investors received, as opposed to return of the transfers in their entirety. *See id.* at 813 (determining that the "transfers of purported profits to investors . . . . were made with the actual intent to defraud" in light of the debtor's plea agreement). That the bankruptcy trustee in *Slatkin* sought only return of profits is not surprising -- good faith investors in a Ponzi scheme are generally liable for only the distributions they received in excess of their initial contribution. As *Donnell* explains, "[u]nder the actual fraud theory, the receiver may recover the entire amount paid to the winning investor, including amounts which could be considered 'return of principal.' However, there is a 'good faith' defense that permits an innocent winning investor to retain funds up to the amount of the initial outlay." 533 F.3d at 771; *see also*

HRS § 651C-8(a) (outlining good faith defense).  Unlike in *Slatkin*, Trustee seeks to avoid the transfers from MFC to DeCoite in their entirety (and as explained below, DeCoite is not entitled to a good-faith defense).  Thus, *Slatkin* provides DeCoite no relief.

DeCoite also argues that Trustee must establish that the transfers from MFC to DeCoite were "in furtherance of" the Ponzi scheme -- in particular, that DeCoite was an investor in the Ponzi scheme, and that the transfers he received were part of the Ponzi scheme.  *See* Doc. No. 11, DeCoite Br. at 11-14.  Although some courts (not in this Circuit) have suggested that a bankruptcy trustee must establish that a transfer was made "in furtherance" of a Ponzi scheme, they have applied such requirement where the debtor had multiple business pursuits.  *See In re Pearlman*, 440 B.R. 569, 575 (Bankr. M.D. Fla. 2010) (finding that bankruptcy trustee must establish transfers were "in furtherance of" Ponzi scheme when debtor orchestrated multiple fraudulent money-making schemes).  *Cf. In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 11 (S.D.N.Y. 2007) ("[C]ertain transfers may be so unrelated to a Ponzi scheme that Ponzi presumption should not apply."); *Zazzli v. AFA Fin. Grp.*, 477 B.R. 504, 513 (Bankr. D. Del. 2012) (same).

Even assuming that the Ninth Circuit would adopt this rule, the uncontroverted evidence establishes that (1) Kimura operated MFC as a Ponzi

scheme; and (2) MFC made several transfers to DeCoite.  As a result, Trustee has met his initial summary judgment burden of presenting evidence that the transfers from MFC to DeCoite were made with fraudulent intent.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden therefore shifted to DeCoite to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986).  DeCoite came forward with no evidence suggesting that MFC (1) was operated as anything other than a Ponzi scheme; (2) was engaged in more than one illegal scheme; or (3) transferred funds to DeCoite for any purpose other than to further the Ponzi scheme.  Therefore, the court finds no genuine issue of material fact that the transfers from MFC to DeCoite were fraudulent.

### 2.    *DeCoite's Good Faith Defense*

DeCoite also argues that the bankruptcy court erred in determining that DeCoite was not entitled to a good faith defense under HRS § 651C-8(a) because Kimura was DeCoite's agent, meaning that Kimura's knowledge of the Ponzi scheme was imputed to DeCoite as principal.  Based on a de novo review and applying Hawaii law,[8] the court affirms the bankruptcy court.

---

[8] Because the transfers at issue occurred in Hawaii and Trustee seeks to avoid the

(continued...)

19

In general, "the knowledge of an agent which he is under a duty to disclose to his principal or to another agent of the principal, is to be imputed to the principal." *Imperial Fin. Corp. v. Fin. Factors, Ltd.*, 53 Haw. 203, 206, 490 P.2d 662, 664 (1971) (citing Restatement (Second) of Agency § 281 (1958)); *see also Great Divide Ins. Co. v. AOAO Maluna Kai Estates*, 2006 WL 2830885, at *6 (D. Haw. Sept. 28, 2006) ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal.") (citing Restatement (Third) of Agency § 5.03 (2006)).  An agent's duty to disclose information to the principal includes any information that is "relevant to affairs entrusted to [the agent] and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person." *Imperial Fin. Corp.*, 53 Haw. at 205, 490 P.2d at 664 (quoting Restatement (Second) Agency § 381).  The exceptions to the imputation rule include: (1) where an agent's disclosure to a principal would breach a superior duty to a third party; (2) where the agent and a third party act in collusion against the principal; and (3) where the interests of the agent and the

---

[8](...continued)
transfers pursuant to HRS § 651C-4, the court applies Hawaii principles of agency law. *See In re Rose*, 2011 WL 3299928, at *4 (9th Cir. B.A.P. June 8, 2011) ("Because the transaction occurred in California, its state law determines to what extent an agency relationship existed, and whether McDaniels' knowledge should be imputed to Collins." (citing *In re Nelson*, 761 F.2d 1320, 1322 (9th Cir. 1985)).

principal are adverse.  *Id*. at 205, 490 P.2d at 663.

DeCoite gave Kimura extensive control over his finances -- Kimura managed DeCoite's financial affairs for years, and was given the power to sign checks on DeCoite's checking account and to deposit checks payable to DeCoite, without his endorsement, into MFC's checking accounts.  And over the years, MFC (through Kimura) made numerous transfers to DeCoite.  As a result, any reasonable principal in DeCoite's position would clearly desire to have Kimura's knowledge that MFC was being operated as a Ponzi scheme.  *See Han v. Yang*, 84 Haw. 162, 172, 931 P.2d 604, 614 (Haw. App. 1997) (applying a "reasonable principal" test to determine that broker owed a duty to disclose information of business dealings to principal).  And Kimura, as financial manager for DeCoite, certainly had a duty to disclose to DeCoite that he was operating MFC as a Ponzi scheme.  *See, e.g.*, *Property House Inc. v. Kelley*, 68 Haw. 371, 378, 715 P.2d 805, 810 (1986) ("[A] real estate agent bears a duty to make a full, fair, and timely disclosure to the principal of all facts within the agent's knowledge which are, or may be, material to the transaction and which might affect the principal's rights and interests or influence his actions.").

Further, none of the exceptions to imputing Kimura's knowledge to DeCoite applies.  There is no evidence that Kimura owed any duty to a third party

to keep the Ponzi scheme separate, or that Kimura and a third party colluded against DeCoite.  *See Imperial*, 53 Haw. at 205, 490 P.2d at 663.  Nor were Kimura's interests adverse to DeCoite.  For such exception to apply, "the agent must have totally abandoned the principal's interest and be acting for his own purposes or those of another.  In other words, the interests of the agent must be completely adverse to those of his principal."  *Great Divide*, 2006 WL 2830885, at *7 (quotations omitted).  There is no evidence that Kimura completely abandoned DeCoite's interests; indeed, MFC continued to make transfers to DeCoite over many years.  Thus, Kimura's knowledge is imputed to DeCoite, which prevents DeCoite from showing that he took the transfers in good faith.

In opposition, DeCoite argues that imputing Kimura's knowledge to DeCoite under an agency analysis does not address the relevant good faith inquiry of whether DeCoite had actual knowledge or inquiry notice of the Ponzi scheme.  Doc. No. 11, DeCoite Br. at 15-16.  The court rejects DeCoite's suggestion that imputed knowledge is a concept wholly distinct from either actual knowledge or inquiry notice -- when knowledge is imputed, it is as if the principal itself is aware of such facts.  *See* Restatement (Third) of Agency § 5.01(4) ("Notice of a fact that an agent knows or has reason to know is imputed to the principal as stated in §§ 5.03 and 5.04.").  As a result, imputing Kimura's knowledge to DeCoite

prevents him from taking benefit of the good-faith defense. *See, e.g.*, *In re IFS Fin. Corp.*, 417 B.R. 419, 444 (Bankr. S.D. Tex. 2009) (finding that principal "should have known" of fraudulent activity through imputation of knowledge from agent such that principal did not have good faith defense).

DeCoite further argues that Kimura's operation of a Ponzi scheme through MFC was entirely outside the scope of any agency relationship he had with DeCoite such that Kimura's knowledge of the scheme cannot be imputed to DeCoite. Doc. No. 11, DeCoite Br. at 17. The court rejects this argument -- Kimura both managed DeCoite's financial affairs and used his authority over DeCoite's affairs to transfer funds from MFC to DeCoite. As a result, Kimura's knowledge of the Ponzi scheme was directly relevant to DeCoite's financial affairs and Kimura's duties to DeCoite. Thus, Decoite certainly would have desired to know this information, and Kimura had a duty to disclose it. *See Imperial Fin. Corp.*, 53 Haw. at 205, 490 P.2d at 664.

The court therefore AFFIRMS the bankruptcy court's determination that DeCoite failed to establish a genuine issue of material fact that he is entitled to a good faith defense.

///

///

23

**C.**   **Whether the Amended Complaint Prevented Trustee from Seeking $1,646,945.20 in Fraudulent Transfers from DeCoite**

DeCoite argues that because the FAC asserts that DeCoite received only $540,390.40 in transfers from MFC, the bankruptcy court erred in allowing Trustee to recover $1,646,945.20 in transfers on summary judgment. *See* Doc. No. 11, DeCoite Mot. at 22-24. DeCoite reasons that he and Trustee stipulated to the filing of the FAC for the specific purpose to reduce the amount of alleged transfers from $1,226,646.82 (as alleged in the Complaint) to $540,390.40, and to include an additional cause of action for breach of contract. As a result, DeCoite asserts that Trustee is limited to seeking at most only $540,390.40. The court rejects this argument.

As an initial matter, DeCoite offers no support for the contention that a claimant is limited to recovering the specific amount of damages asserted in a pleading (unless, for example, such amounts are alleged for jurisdictional purposes). The Federal Rules include no such limitation -- rather, Rule 54(c) specifically contemplates that all final judgments, other than those granted through default judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *See also Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 901 (4th Cir. 1996) (explaining that Rule 54(c) clarified that "the relief to which a claimant is

24

entitled is not limited to the relief it requested in its original demand for judgment"); *Menne v. Celotex Corp.*, 861 F.2d 1453, 1474 (10th Cir. 1988) (stating that judgment is allowed in excess of the amount sought in the complaint (citing *Troutman v. Modlin*, 353 F.2d 382 (8th Cir. 1965)); *see also* Fed. R. Bankr. P. 7054 (making Federal Rule of Civil Procedure 54(c) applicable to adversary proceedings).  The FAC gave DeCoite notice that Trustee was seeking return of fraudulent transfers made from MFC to DeCoite, and at summary judgment, Trustee established the amount of those transfers.

Nor did Trustee somehow limit his recoverable damages by filing the FAC reciting a lesser amount than contained in the Complaint.  As the bankruptcy court correctly explained, a bankruptcy trustee can compromise or abandon a claim only with court approval.  *See* 11 U.S.C. § 554, Fed. R. Bankr. P. 9019.  The parties' Stipulation to file the FAC suggests neither that Trustee was seeking to abandon and/or compromise his claims, nor that the parties were seeking approval of such abandonment.  Rather, the Stipulation recites the parties' agreement for Trustee to file a FAC because (1) after the filing of the initial Complaint, Trustee determined that he could allege an additional claim for breach of contract; and (2) Trustee could otherwise file a separate action for breach of contract, such that amendment was "in the interest of mutual economy and the economy of the Court"

25

to determine all claims at the same time." Doc. No. 12-16, DA Ex. P.  In other words, there is nothing in the Stipulation raising to the bankruptcy court's attention any request to limit Trustee's available relief, and the bankruptcy court therefore could not approve any request (however implicit) to limit Trustee's claims. Indeed, the bankruptcy court did not interpret the Stipulation as seeking approval to abandon any claims, and this interpretation of the Stipulation is dispositive.  *See In re Mega-C Power Corp.*, 460 Fed. Appx. 693, 695 (9th Cir. 2011) (recognizing the bankruptcy court's "undisputed right to interpret its own orders"); *In re Diaz*, 459 B.R. 86, 89 (Bankr. C.D. Cal. 2011) ("A bankruptcy judge has the power to interpret its own orders.") (citing *In re Optical Techs., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005)).

Thus, the bankruptcy court made no error in determining summary judgment in favor of Trustee in the amount of $1,646,945.20, as opposed to any lesser amount alleged in Trustee's pleadings.

## D.    Prejudgment Interest

The bankruptcy court's final judgment awards Trustee prejudgment interest, accruing "from the date of each transfer, in the sum of $1,723,453.10 through January 25, 2013, and continuing to accrue at the rate of $451.22 per day until entry of this judgment."  Doc. No. 12-3, DA Ex. C.  DeCoite argues that the

court should reverse this determination because judgment was not delayed for a long period of time, and at most, prejudgment interest should be calculated at the federal rate.  The court rejects that the bankruptcy court abused its discretion in making these determinations.

Whether prejudgment interest should be granted is a matter of Hawaii law.  *See In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007) ("Thus, state law applies to Plaintiff's claim for prejudgment interest under state law unless federal law preempts it."); *In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994) ("[W]e have looked to state law to determine the interest rate.").  Under Hawaii law, "[p]rejudgment interest is an element of complete compensation. Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *Kalawaia v. AIG Haw. Ins. Co.*, 90 Haw. 167, 172, 977 P.2d 175, 180 (1999) (citations and internal quotation marks omitted); *see also Molinar v. Schweizer*, 95 Haw. 331, 335, 22 P.3d 978, 982 (2001) (stating that "prejudgment interest compensates for the inevitable litigation delay in being reimbursed for damages incurred").  The purpose of prejudgment interest is to "allow the court to designate the commencement date of interest in order to correct the injustice when a

judgment is delayed for a long period of time for any reason, including litigation delays." *Leibert v. Fin. Factors, Ltd.*, 71 Haw. 285, 293, 788 P.2d 833, 838 (1990); *see also Metcalf v. Voluntary Employees' Benefit Ass'n of Haw.*, 99 Haw. 53, 61, 52 P.3d 823, 831 (2002) ("The purpose of prejudgment interest is to discourage recalcitrance and unwarranted delays in cases which should be more speedily resolved.").  A finding of fault by the non-moving party is not necessary -- "where no fault is found on either side, the trial court may still award or deny prejudgment interest in its discretion, depending on the circumstances of the case."[9] *Tri-S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 498, 135 P.3d 82, 107 (2006).

Trustee brought this action to recover transfers from MFC to DeCoite, which started in 1999.  Needless to say, judgment has been a long time coming.  This delay is properly viewed from the time of the transfers, and not from the commencement of this action -- prejudgment interest is proper "when a judgment is delayed for a long period of time for any reason," and litigation delay is only one

---

[9]  Citing *Weite v. Momohara*, 124 Haw. 236, 264-65, 240 P.3d 899, 927-28 (Haw. App. 2010), DeCoite asserts that an award of prejudgment interest should be denied where (1) the defendant's conduct did not cause any delay in the proceedings; (2) the plaintiff himself caused or contributed to the delay in bringing the action to trial; or (3) an extraordinary damage award has already adequately compensated plaintiff.  Doc. No. 11, DeCoite Br. at 20.  *Weite* does not so hold; rather, *Weite* provides that "it is clearly within the discretion of the circuit court to deny prejudgment interest where appropriate" and provides these three scenarios as examples.  124 Haw. at 264-65, 240 P.3d at 927-28.

cause of such delay.  *See Leibert*, 71 Haw. at 293, 788 P.2d at 838.[10]  Thus, there

was no abuse of discretion in determining that Trustee was entitled to prejudgment

interest.[11]

      Further, the Hawaii state law rate applies -- "state law regarding

prejudgment interest is applicable via 11 U.S.C. § 544(b)."  *In re Agric. Research

& Tech. Grp.*, 916 F.2d at 541; *see also In re Acequia, Inc.*, 34 F.3d at 818 n.4.

The court therefore AFFIRMS the bankruptcy court's award of prejudgment

interest.

///

///

///

///

///

---

[10]  Otherwise, the award of prejudgment interest would always start at the commencement of the action.  HRS § 636-16, however, allows the court to "to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred."

[11]  The court further rejects DeCoite's suggestion that prejudgment interest in this action is punitive in light of the "unique circumstances of a Ponzi scheme lawsuit."  *See* Doc. No. 11, DeCoite Br. at 11.  DeCoite cites no support for his proposition, and the bankruptcy court properly considered that such prejudgment interest would ensure full compensation to correct for the time value of money.  Although there may be various competing equities to consider, DeCoite has failed to show that the bankruptcy court abused its discretion in considering them.

## V.  <u>CONCLUSION</u>

Based on the above, the court AFFIRMS the bankruptcy court's

January 24, 2013 Decision as to Trustee's Motion for Summary Judgment, and the

February 11, 2013 Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 13, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Field v. DeCoite*, Civ. No. 13-00091 JMS/BMK, Order Affirming Bankruptcy Court's January 24, 2013 Memorandum of Decision on Plaintiff's Motion for Partial Summary Judgment on Counts 2, 3, and 4